IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE CARLOS JIMENEZ-FRANCESCHINI, *et al.*, **Plaintiff**, v. JENNIFER BENTLEY, *et al.*, **Defendants.** | Civil No. 11-1039 (FAB) |

**OPINION AND ORDER**[1]

BESOSA, District Judge.

Before the Court is the defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12"). After reviewing the record and applicable law, the Court **GRANTS** the motions and dismisses this case.

**I. Background**

Plaintiffs Jose Carlos Jimenez-Franceschini and Maria Jose Jimenez-Franceschini (hereafter "Jose" and "Maria") filed a complaint on January 16, 2011 against defendants Jennifer Bentley ("Bentley"), Consejo de Titulares Condominio El Sol ("Condominio El Sol"), MAPRFE Insurance Company ("MAPFRE"), and Real Legacy Insurance Company ("Real Legacy"). (Docket No. 1 at p. 2.)

---

[1] Justin Rowinsky, a second-year student at the Georgetown University Law Center, assisted in the preparation of this Opinion & Order.

Civil No. 11-1039 (FAB)                                                2

Plaintiffs allege that on January 17, 2010, as their mother and father were leaving the apartment rented to them by defendant Bentley in the Condominio El Sol building, the wooden railing on the staircase cracked and plaintiffs' mother, Josefina Franceschini-Pagan, fell four stories to the ground. Id. at p. 3. She ultimately succumbed to the injuries sustained from that fall, and plaintiffs seek fifteen million dollars in pain and suffering damages resulting from the alleged negligence of defendants. Id. at pp. 4-6.

Plaintiffs assert diversity as the basis of federal subject matter jurisdiction, and are claiming damages pursuant to Puerto Rico law. Id. at pp. 1, 6 (citing 28 U.S.C. § 1332 (a)(1) (2012)). During discovery, Maria answered "my testimony" in response to an interrogatory asking for all evidence proving she was diverse from the defendants. (Docket No. 155 at p. 7.) Defendant MAPFRE eventually filed a motion to dismiss for lack of subject matter jurisdiction on November 10, 2011, (Docket No. 142), and defendant Real Legacy also filed a motion to dismiss on November 13, 2011. (Docket No. 146.) Remaining defendants Bentley and Condominio El Sol filed motions to join in MAPFRE and Real Legacy's motions to dismiss on November 17, 2011. (Docket Nos. 148 and 149, respectively.) All defendants have contested Maria's domicile, contending that she was still a domicile of Puerto Rico when the

complaint was filed.  Thus, they argue that she was not diverse from all defendants.  (Docket No. 142 at p. 1.)  Real Legacy has also challenged the domicile of Jose, arguing that he is also domiciled in Puerto Rico, rather than New York.  (Docket No. 146 at p. 13.)

Defendants cite Maria's deposition.  They do not contest any fact, but argue that the facts are insufficient to establish that Maria had changed her domicile to Pennsylvania.  (Docket No. 142 at p. 7.)  Defendants highlight numerous facts including:  her complete financial dependence on her father, her unclear future place of residence, her current Puerto Rico driver's license and history of voting in Puerto Rico but not in Pennsylvania, and that all utility bills from the Pennsylvania apartment she resided in were in her roommate's name.  (Docket No. 142 at pp. 7-9.)

Plaintiffs filed a response on December 5, 2011, arguing that Maria was a citizen of Pennsylvania when the complaint was filed. (Docket No. 155 at p. 6.)  Plaintiffs cite Maria's deposition to assert she was domiciled in Pennsylvania at the time by highlighting that:  she was living in an apartment off-campus for her senior year at Villanova University; she had interned the past two summers in North Carolina; she had applied to three veterinary schools including her first choice, Pennsylvania State University; and her statement that she does not intend to come back to Puerto

Civil No. 11-1039 (FAB)                                                    4

Rico because "Ever since my mother died, I feel like a visitor here. I don't feel at home." Id. at pp. 6-7.

## II. Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction

A defendant may file a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction at any time because federal courts are "courts of limited jurisdiction." Padilla-Mangual v. Pavia Hosp., 640 F.Supp.2d 128, 133 (D.P.R. 2009) (citing Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979). When reviewing motions to dismiss, a court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (internal citation omitted). When subject matter jurisdiction is challenged, the party asserting jurisdiction has the burden of proving it by a preponderance of the evidence. See, e.g., Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992) (internal citation omitted). The Court "may consider whatever evidence has been submitted, such as the depositions" when considering a motion to dismiss for lack of subject matter jurisdiction filed pursuant to Rule 12(b)(1). Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

Civil No. 11-1039 (FAB)                                                 5

**III. Standard for Establishing Diversity Jurisdiction**

Section 1332(a), which covers diversity jurisdiction, requires that the amount in controversy exceed $75,000, and that all plaintiffs be diverse from all defendants.  28 U.S.C. § 1332(a) (2012); see also Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 553 (2005) ("[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action.").  Courts evaluate whether there is diversity between all plaintiffs and all defendants by looking to the parties' domicile, which is "the place where he has his true, fixed home and principal establishment."  Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008) (quoting Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir. 1988)).  There is a "presumption of continuing domicile," and a party must prove her domicile has changed through objective evidence that establishes:  (1) that she is physically present in the new state, and (2) that she has an intent to remain there.  See Padilla-Mangual, 516 F.3d at 31.  If the evidence does not prove a change of domicile by a preponderance of the evidence, the former domicile remains the current one.  See, e.g., Hawes, 598 F.2d at 701 (holding that "until a new [domicile] is acquired, the established one continues.").  Courts determine

Civil No. 11-1039 (FAB)                                                    6

where the parties were domiciled as of the date the complaint was filed.  See Padilla-Manqual, 516 F.3d at 31.

**IV. Discussion**

Plaintiffs argue that the defendants are challenging the facts establishing diversity, specifically "an issue of credibility." (Docket No. 155 at p. 3.)  Defendants, however, have accepted Maria's deposition testimony as factually accurate and claim that the facts contained in it are not sufficient to establish a change of domicile to Pennsylvania.[2]  Therefore, the Court will only address the sufficiency of the facts and not their credibility. Furthermore, the Court will rely solely on Maria's testimony because it is the only evidence offered by the plaintiffs to establish diversity jurisdiction.  (Docket No. 146 at p. 3.)  The Court will first analyze Maria's physical presence and then her future intentions on January 16, 2011, the date the plaintiffs' complaint was filed.  The Court will not address the arguments regarding Jose's domicile because it finds that Maria is not diverse from the defendants, and the entire action can be

---

[2] All defendants have used the facts contained within Maria's deposition testimony to prove she was not domiciled in Pennsylvania when the complaint was filed. Real Legacy's motion does state that "Defendants challenge the accuracy of the jurisdictional facts asserted by the plaintiffs." The content of their analysis, however, addresses the insufficiency of those facts to establish domicile in Pennsylvania. (Docket No. 146 at pp. 10, 11-13.)

Civil No. 11-1039 (FAB)                                                7

dismissed.  See Exxon Mobil Corp., 545 U.S. at 553 (holding that all plaintiffs must be diverse from all defendants).

    **A.**    **Physical Presence in the State**

During Maria's first three years at Villanova University, she lived on-campus in the dorms before moving to an off-campus apartment for the semester immediately preceding the filing of this complaint.[3]  (Docket No. 155 at pp. 12:16-22, 13:1-3.)  On January 16, 2011, the date when plaintiffs filed the complaint, however, Maria was staying in her father's home in Puerto Rico.  Maria contends that this brief trip to Puerto Rico occurred because she was waiting to travel to Rome for a semester of study abroad.  (Docket No. 155 at p. 7.)  She also argues that she would go to Puerto Rico "sometimes during holidays and summer to visit family members."  Id.  Her attendance at Villanova demonstrates that she spent most of her time in Pennsylvania for the several years preceding this complaint.  See Padilla-Manqual, 640 F.Supp.2d 128, 134 (finding "no question that [the plaintiff] meets the physical presence prong."); Alicea-Rivera v. SIMED, 12 F.Supp.2d 243, 246 (D.P.R. 1998) (holding that "Plaintiff's physical presence in Ohio is uncontested.").  Reading these factual allegations in a light

---

[3] Students at Villanova University must live off-campus during their senior year.  Docket No. 155-5 at pp. 12:23, 13:1-7.  For that reason, the Court gives little weight to the fact that Maria lived in an apartment away from the university.

Civil No. 11-1039 (FAB)                                                    8

most favorable to the plaintiff, the Court finds that she had lived in Pennsylvania for a majority of the three-and-a-half years before plaintiffs filed the complaint.  Therefore, the Court finds that Maria was physically present in Pennsylvania.  Because physical presence is only the first requirement for a change in domicile, however, the Court will now examine whether Maria demonstrated the necessary intent to remain in Pennsylvania.

**B.    Intent to Remain in the State**

In addition to a physical presence, Maria must also prove by a preponderance of the evidence that she had the requisite intention to remain indefinitely in Pennsylvania.  See, e.g., Padilla-Mangual, 516 F.3d at 32.  First, the Court will discuss the legal significance of Maria being an out-of-state college student.  The Court will then analyze the other factors considered by a trial court when determining a party's domicile for purposes of diversity jurisdiction.

**i.    Domicile of College Students**

The First Circuit Court of Appeals has held that "out-of-state college students are not domiciliaries of the state in which they go to school." Garcia Perez v. Santaella, 364 F.3d 348, 354 (1st Cir. 2004) (citing Alicea-Rivera, 12 F.Supp.2d at 246); see also Murphy v. Newport Waterfront Landing, Inc., 806 F. Supp. 322, 324 (D.R.I. 1992) ("[O]ut-of-state students are often located

Civil No. 11-1039 (FAB)                                                     9

in the state only for the duration of and for the purpose of their studies, they are generally presumed to lack the intention to remain in the state indefinitely."). Although students are physically present in the state where they attend college (for at least the duration of the school year), the intent to remain requirement is often lacking due to uncertain "postgraduate commitments." Alicea-Rivera, 12 F.Supp.2d at 246. The degree of the college student's financial independence is also a relevant factor, and some courts have held that it is the determinative factor. See, e.g., Mitchell v. Mackey, 915 F. Supp. 388, 391 (M.D. Ga. 1996) (internal quotation omitted). Maria was both uncertain about her post-graduate intentions and financially dependent on her father.

       First, even though Maria had been living for the majority of the past four years in Pennsylvania while attending Villanova University, her post-graduate intentions were unclear. She applied to three veterinary schools in Pennsylvania, California and London. (Docket No. 142-1 at p. 40:3-6.) Although her stated first choice was the school in Pennsylania, Maria admitted she would go to California or London if accepted there instead. Id. at p. 70:1-4. Were she not to be accepted at any of the three schools, her intention would be to apply for an internship "probably . . . in the U.S., northeast" but was understandably

Civil No. 11-1039 (FAB)                                            10

unable to "predict the future" as her counsel indicated.  Id. at p. 77:3-14.  Unfortunately for Maria, this common lack of clarity about a college student's future plans lacks the "deliberate investment of time and energy in preparing for living and working indefinitely" in a state that would demonstrate a clear intent to remain there.  See Garcia Perez, 364 F.3d at 354.  Maria's goal of attending veterinary school in Pennsylvania lacks the requisite surety that is necessary to overcome "a mere detached, indefinite and ambulatory intention" offered as evidence of her intent to remain in Pennsylvania.  See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 367 (1st Cir. 2001) (internal citation omitted).

        Second, Maria's expenses were all paid by her father, including her credit card, cell phone and medical insurance plan.  (Docket No. 142-1 at pp. 67:6-22, 68:1-12, 91:10-16.) Additionally, her cell phone and medical insurance were part of her father's Puerto Rico contracts.  Id.  Maria also confirmed that on the date the complaint was filed she was a dependant of her father, and answered "yes" when asked whether her father "was paying for all [her] expenses."  (Docket No. 146-1 at p. 60:2-6.)  Financial dependence on her parents is a second factor indicating that her domicile remained in Puerto Rico.  See Mitchell, 915 F. Supp. at 391 ("[A]lthough [the plaintiff] is not technically a minor, she

nevertheless is entirely dependent upon her parents for tuition, living expenses, transportation, and insurance.").

### ii. Other Factors Relevant to Determining Intent

In addition to a lack of financial independence and uncertainty about her postgraduate intentions, the facts fail to establish Maria's intent to remain in Pennsylvania based on several other factors used by courts. The factors include: where a driver's license is issued, where a party is registered to vote, club and church membership, and whether that party is employed in the state. See, e.g., Bank One, Texas, N.A., 964 F.2d at 50 (internal citation omitted). All of these factors counsel against finding that Maria has demonstrated the necessary intent sufficient to change her domicile to Pennsylvania.

First, Maria has retained her Puerto Rico-issued driver's license, previously voted in the 2008 Puerto Rican primary election, and was not currently registered to vote in Pennsylvania. (Docket No. 142-1 at pp. 74:6-27, 77:17-22.) Although not dispositive, the First Circuit has stated that where a person is registered to vote is "a weighty factor in determining domicile." Padilla-Mangual, 516 F.3d at 32 (internal citation omitted). Both are *indicia* of a party's "ties" to a new state of domicile that demonstrate an intent to remain there. See, e.g., Garcia Perez, 364 F.3d at 352 (finding that "[b]y the time the lawsuit was filed,

Civil No. 11-1039 (FAB)                                                    12

they had each registered to vote in Florida, acquired Florida drivers' licenses.").

Second, Maria's deposition does not indicate that she was ever employed in Pennsylvania, nor did she establish membership in any religious or civic organization.  Maria highlighted the fact that she was a veterinary intern for the previous two summers in North Carolina, (Docket No. 155 at p. 6), but that does not bolster her claim of domicile in Pennsylvania. If anything, it undermines her claim because the employment was in a different state (a citizen is only domiciled in one state) and she lived with "distant family members," further illustrating the degree of financial dependence on her family.  (Docket No. 142-1 at p. 38:7-19.)  She also provided no evidence of any civic ties to the state of Pennsylvania such as "association membership cards," or a "gym membership."  (Docket No. 142 at p. 6.)

Finally, even though Maria lived in an off-campus apartment[4] at the time the complaint was filed, none of the utility bills were in her name; all were in the name of one of her roommates.  Id. at p. 72:7-13.  Also, the copy of the lease she provided and cited by her counsel's brief was blank, providing no evidence that she was legally a tenant of Pennsylvania.  (Docket

---

    [4] See footnote 3.

Civil No. 11-1039 (FAB)                                                   13

No. 155-6.)  These facts are often cited as some of "the steps necessary to acquire a new domicile," all of which were lacking. See Hawes v. Club, 598 F.2d 698, 702-03 (1st Cir. 1979) ("She rented an apartment . . . and obtained employment.").

The only factor supporting a change in domicile is her stated intent never to return to Puerto Rico.  (Docket No. 155 at p. 7.)  Without more, her claim is insufficient to substantiate an intent to remain specifically in Pennsylvania, indefinitely. The offered evidence does not prove by a preponderance of the evidence that Pennsylvania is Maria's "true, fixed home and principal establishment." Garcia Perez, 364 F.3d at 355 (internal citation omitted).  Accordingly, Maria's domicile at the time the complaint was filed was still Puerto Rico, and, therefore, she was not diverse from all defendants as required by section 1332.

**IV. Conclusion**

For the reasons expressed above, the Court **GRANTS** the defendants' motions to dismiss for lack of subject matter jurisdiction.  This case is **DISMISSED, without prejudice**.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 14, 2012.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE